Green, J.
delivered the opinion of the court.
The facts of this case are shortly as follows: Sion S. Read executed a mortgage to Jesse Locke for a negro girl slave named Jemima, to secure a debt of about one hundred and fifty dollars. He subsequently executed a deed of trust to Robert B. Cain for the same negro girl, subject to the previous mortgage to Locke. This deed of trust included other property to a considerable amount, and was made to secure debts and liabilities of various persons, to a considerable amount. Subsequently to the execution of this deed of trust, said Read executed a mortgage to S. D. Rowan for all the property embraced in the deed of trust to Cain, subject to the debts specified in that deed.
The said Read died, and J. B. Lusk administered on bis estate. Locke, the first mortgagee, filed a bill to foreclose his mortgage, making the administrator of the mortgagor only a party defendant. At the September term, 1846, of the McMinnville chancery court, a decree of foreclosure was pronounced, and the negro girl, Jemi-ma, was ordered to be sold. The clerk and master sold the negro girl, the 31st of October, 1838, when L. D. Mercer and John Moore became the purchasers, at the price of four hundred and fifty-six dollars and ten cents; which sale was reported to the March term, 1847, of said court: when the report was confirmed, and the title to the slave vested in the purchasers, by the decree of the court.
*361 All the property mortgaged to Rowan has been sold, and the proceeds applied to the payment of other debts having a preference, and the debt of Rowan (about one hundred and fifty dollars) remains unpaid. Rowan now files this bill against Mercer and Moore, the purchasers of the girl Jemima, alleging that the property mortgaged to him had been sold at a great sacrifice, and had been brought to sale by those concerned, with a view to favor the widow and family of said Read, the mortgagor; and that he is willing to take the property at a fair sale, and pay all the debts, including his own; and that he had proposed to Mercer to take the girl, Jemima, and pay the price he had given, and also extinguish his own; but that Mercer refused to give the girl up. The bill prays that the girl be resold, &c.
The defendants answer, that they purchased the girl fairly, at a legal sale, for a fair and full price, without any knowlege of complainant’s mortgage ; that complainant was fully cognizant of the said decree of foreclosure and sale, and ought not, at this late day, after the value of the girl has greatly increased, by reason of the rise in the price of property, and by reason that said girl has had a child since said purchase, to be permitted to disturb their title.
The bill was filed the 8th of March, 1847-
There is no proof in the cause except the deeds referred to, and the decrees in the case of the prior mortgagee against the administrator of the mortgagor.
The only question in the case is, whether this decree of foreclosure and sale are invalid, by reason that the subsequent mortgagees were not parties.
It is certainly true, that in a bill fo foreclose a mortgage, subsequent mortgagees are proper parties; but we *362 do not think they are necessary parties. The English cases are by no means satisfactory upon this question. In several of them the court has required subsequent incumbrancers to be made parties; but, in several other cases, mortgagees have been allowed to foreclose in the absence of subsequent mortgagees. Mr. Calvert, in his treatise on parties, p. 123 to 133, cites all the cases on this subject, and from this review remarks, “first, that morgagees have been allowed to foreclose in the absence of subsequent incumbrancers. This has taken place in Needler vs. Deeble; Roscarriclt vs. Barton; Greswold vs. Marsham; Cockes vs. Sherman; Lomax vs. Hyde; Draper vs. Clarendon; Godfrey vs. Chadwell; and Mooret vs. Western. Secondly, that the decree of foreclosure is not conclusive against subsequent mortgagees, who áre absent; and that on proof of collusion they have been allowed to open the account. Needler vs. Deeble; Cockes vs. Sherman; Lomax vs. Hyde; Draper vs. Clarendon.”
In the case of Haines vs. Beach, (3 Jh. Ch. Rep. 459,) chancellor Kent reviewed some of the English cases» and came to the conclusion that subsequent incumbran-cers ought to be made parties. In that case it was proved that Field, the purchaser, had notice of the mortgage to Brazier before he bid at the master’s sale; and that the master, before the sale, gave public notice of the existence and amount of the junior mortgage, and that the sale would be subject to the same. Field gave only one thousand five hundred and eight dollars for the lot, and it was worth seven thousand dollars. The chancellor set aside the sale, and ordered the property to be resold, and that Field should be reimbursed the money he had given, and also the sum expended by him in improvements.
*363 The facts in the case of Haines vs. Beach presented a clear case for a resale of the property. The master gave notice that the sale would be subject to the junior mortgage, and Field gave but little more than one-fifth part of the value of the property. So that the review of the cases, and the reasoning of chancellor Kent,, were wholly unnecessary for the decision of the case before him.
This court, in the case of Mims vs. Mims, (1 Hum. Rep. 425,) decided that in a bill to foreclose a. mortgage, neither prior nor subsequent incumbrancers need be parties.
It is certainly true, that it may sometimes be important that subsequent incumbrancers should be parties to such a bill, especially where the property is to be sold, and where there may be a surplus. - But, on the other hand, it will be a great increase of trouble, and a serious obstacle to him in his suit for the satisfaction of his debt, if the mortgagee is compelled to bring into court as many incumbrancers as his debtor may choose to make. The estate may not be more than sufficient to cover his debt; and as the suit is not instituted for the benefit of the subsequent incumbrancers, they ought not to pay costs; and if the mortgagor is unable to pay them, the whole costs must come out of the fund, and thus greatly diminish the security. Calvert on Parties, 136. In addition to this, why should a mortgagee be entangled with all the questions that may arise- among subsequent mortgagees? These inconveniences are, we think, much greater than can exist by a failure to bring subsequent incumbrancers before the court; especially as the decree is not conclusive against them, and on proof of collusion *364 they may be allowed to open the account or insist upon a resale of the property.
We think, therefore, that subsequent incumbrancers are not necessary parties to a bill to foreclose a mortgage; and that if there has been no collusion between the parties, or other special ground of equity, the decree and sale are conclusive.
In the case before us, no such facts exist as will entitle this complainant to relief. The property sold for a fair price ; and after the sale, and before the bill was hied, the value of the slave had become much greater by the birth of a child and the increase of the price of property. Had the slave died in the mean time, she would have been a loss to the purchaser; and now to permit the complainant to have her resold, would be to give him all the advantage of her increased value; while the defendant will have been at the risk all the while of the loss her death would have produced. This would certainly be inequitable.
Affirm the decree.